UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ADRIAN D. BOWMAN, <br> a/k/a CALVIN BRISON, <br><br> Petitioner, <br><br> v. <br><br> TERRY RUSSELL, <br><br> Respondent. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 4:12-CV-0955-JCH |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Adrian Bowman's Petition Under § 2254 for Writ of Habeas Corpus by a Person in State Custody, which Bowman filed on May 23, 2012. (Petition, ECF No. 1). The Petition has been fully briefed and is ready for disposition.

## BACKGROUND

On June 4, 2003, Bowman was convicted by a jury in the City of St. Louis, Missouri of four counts: (I) Murder in the First Degree; (II) Armed Criminal Action ("ACA"); (III) Assault in the First Degree; and (IV) a second count of ACA. (Petition at 2). Bowman was sentenced to life without parole on the First-Degree Murder count. *Id.* He also received sentences of 30-years imprisonment on each of the remaining three counts. *Id.*

Bowman first challenged his conviction by direct appeal in state court. Bowman raised two points in his direct appeal: (1) that "the trial court erred in overruling his motion for continuance of his sentencing hearing for the purpose of securing the presence of one of the State's witnesses who would allegedly recant his trial testimony, or in the alternative, denying his motion for new trial" based on the prospect of that recantation; and (2) that "the trial court erred in denying his request for a mistrial or in the alternative, denying his request to replace

1

Juror Number 73, because of alleged exposure to a newspaper article relating to Bowman and his trial." (Direct Appeal Order, Resp. Exh. 5, at 2, 4). The Missouri Court of Appeals affirmed Bowman's conviction. *Id.* at 5. The Missouri Supreme Court then denied Bowman's motion for transfer. (Petition at 2).

Bowman also filed a motion for post-conviction relief in state court pursuant to Missouri Supreme Court Rule 29.15. (Petition at 4). In his 29.15 Motion, Bowman sought relief on the basis that his trial counsel was ineffective for: "(1) failing to call several alibi witnesses, (2) not objecting to a statement the prosecutor made during closing argument, and (3) not offering an involuntary manslaughter instruction." (29.15 Appellate Order, Resp. Exh. 11, at 3). The 29.15 motion court denied Bowman's motion after an evidentiary hearing. (Petition at 4). The Missouri Court of Appeals affirmed that denial. *Id.* at 4-5.

In this Petition, Bowman raises four grounds for relief: (1) that he was denied due process when the trial court did not allow Bowman "to present evidence of the State's main witness [*sic*], Dwayne Dixon, recantation of his trial testimony in a hearing on [Bowman's] Motion for New Trial[;]" (2) that he was denied due process because the trial court did not replace Juror 73 or declare mistrial after learning that the juror "brought a copy of the St. Louis Post-Dispatch into the jury room, prior to the beginning of evidence on June 4, 2003, which paper contained an article discussing the ongoing murder trial of [Bowman] as well as discussing the fact that he had been acquitted of another homicide three months prior[;]" (3) that his trial counsel was ineffective because "he failed to interview, properly investigate, subpoena and call material witnesses, Lawanda Shears, Debora Williams, Jola Howard, and Juwan Clark whose testimony was necessary to provide [Bowman] a viable defense[;]" and (4) that his trial counsel was ineffective for failing "to object to the State's characterization, in closing arguments, of

[Bowman] as 'the predator of the type that makes this city unlivable, the people that go out there with guns and kill people' . . . ." (Support Memo, ECF No. 1-1, at 1, 4, 8, 10).

## DISCUSSION

### I. Timeliness

In addition to challenging each of Bowman's claims on the merits, the State contends that Bowman's Petition should be denied because it is untimely. Under 28 U.S.C. § 2244(d)(1), a one-year statute of limitations applies to the habeas petitions of state prisoners, and it begins to run at the time the state court judgment "became final." *Id.* This limitations period is tolled under 28 U.S.C. § 2244(d)(2) for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." *Id.* At issue here is the scope of the term "pending" as used in § 2244(d)(2).

According to the State:

> The Missouri Supreme Court denied transfer of the case on direct appeal on April 27, 2005. The time for filing a certiorari petition expired ninety days later on approximately July 27, 2005. This completed direct review of the case for purposes of starting the one-year statute of limitations under 28 U.S.C. §2244(d)(1). But the statute of limitations was already statutorily tolled starting on March 5, 2005 under 28 U.S.C. § 2244(d)(2), which tolls the statute of limitations while a properly filed state collateral review motion "is pending". Bowman filed a *pro se* Rule 29.15 motion on March 5, 2005.
>
> The appeal of the denial of the post-conviction relief motion was decided on May 17, 2011. . . . Bowman through counsel filed a petition under 28 U.S.C. §2254 on May 23, 2012. Because the petition was filed by counsel the 'prison mail box rule' is not applicable.
> . . .
>
> In this case Bowman appears to have let the one year statute of limitations run out after his state post-conviction review case ceased to be pending on May 17, 2011, ending statutory tolling.

(State Response, ECF No. 6, at 3-6 (internal citations omitted)).

In his Reply, Bowman explains the tolling period as follows:

> Bowman filed for post-conviction relief on March 23, 2005, which was before the Missouri Supreme Court denied his Application for Transfer on April 26, 2005. Bowman's post-conviction motion was not decided by the trial court until May 23, 2010. Bowman appealed that decision to the Court of Appeals which did not enter its opinion until May 17, 2011. Thereafter, Bowman had 15 days to file his motion for rehearing. As such, Bowman's statute of limitations was tolled from March 23, 2005 until June 1, 2011. Therefore, Bowman's statute of limitations <u>began</u> on June 2, 2011 and he had until June 1, 2012 to file his federal petition for habeas corpus.

(Bowman Reply, ECF No. 8, at 2-3 (emphasis in original)). Thus, the State contends that Bowman's state post-conviction motion ceased to be pending, ending the tolling of the limitations period, on the date the Court of Appeals affirmed the decision of the motion court. Bowman, on the other hand, asserts that his state post-conviction motion was pending until the time for review of that motion expired.

Bowman's position better accords with Eighth Circuit law. In *Williams v. Bruton*, 299 F.3d 981 (8th Cir. 2002), the Eighth Circuit determined "that an application for state post-conviction or other collateral review remains 'pending' during the time in which a prisoner may appeal a denial of the application, even if the petitioner does not appeal." *Streu v. Dormire*, 557 F.3d 960, 966 (8th Cir. 2009) (citing *Williams*, 299 F.3d at 983). Bowman's post-conviction motion therefore remained pending throughout the period during which he could have appealed the Court of Appeals' decision on his post-conviction motion.

Bowman filed for post-conviction relief under Rule 29.15 on March 23, 2005, which was before the judgment against him became final and began the running of the § 2254(d)(1) statute of limitations. The Missouri Court of Appeals affirmed the motion court's denial of Bowman's 29.15 motion on May 17, 2011. Under the Missouri Supreme Court Rules, Bowman then had 15 days to appeal that decision through an application for transfer to the Missouri Supreme Court.

Missouri Rule 83.02. This gave Bowman until June 1, 2011 to file such an appeal. Since the one-year statute of limitations had been tolled from the time it started running, the one-year limitations period under § 2254(d) therefore did not expire until June 1, 2012. Thus, the May 23, 2012 filing of Bowman's habeas petition was timely, and the Court will review the merits of Bowman's Petition.

**II. Ground 1**

Bowman first contends that "[t]he trial court erred by not allowing [Bowman] to present evidence of the State's main witness [*sic*], Dwayne Dixon, recantation of his trial testimony in a hearing on [Bowman's] Motion for New Trial." (Support Memo at 1). Bowman casts this refusal by the state court to hear his "newly discovered evidence" as a denial of his "Constitutional rights to due process of law, to present a defense, to a fair trial, and to access to the courts in violation of the Fifth, Sixth, and Fourteenth Amendments . . . ." *Id.* at 4. He charges no other error to the state court in this count.

Despite Bowman's effort to characterize this ground for relief as a claim of constitutional error, it is essentially a freestanding claim of actual innocence based on newly discovered evidence. In other words, Bowman does not claim that he is innocent but was wrongfully convicted due to a constitutional error committed during his trial. He claims the state court committed constitutional error warranting federal habeas relief because it refused to hear evidence of an exculpatory nature that did not become available until after his trial. While there is some controversy over whether such claims can serve as a basis for federal habeas relief in capital cases, they are not a basis for habeas relief in non-capital cases. *See Herrera v. Collins*, 506 U.S. 390, 417 (1993) ("We may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would

render the execution of a defendant unconstitutional"); *see also House v. Bell*, 547 U.S. 518, 554-55 (2006); *Meadows v. Delo*, 99 F.3d 280, 283 (8th Cir. 1996) (holding in a non-capital case that petitioner's "claim of innocence based on newly discovered evidence is not cognizable on habeas review"). Bowman's first ground for relief therefore must fail.

## III. Ground 2

Bowman next charges constitutional error to the trial court for "not replacing Juror 73, Diana Thompson, or declaring a mistrial, after it had been discovered that she had brought a copy of the St. Louis Post-Dispatch into the jury room, prior to the beginning of evidence on June 4, 2003 . . . ." (Support Memo at 4). That paper allegedly included "an article discussing the ongoing murder trial of [Bowman] as well as discussing the fact that he had been acquitted of another homicide three months prior." *Id.* Bowman contends that "[t]his potential exposure to this inflammatory information by all of the jurors creates a presumption that they reached a verdict based upon [Bowman's] criminal propensity and sympathy for the victims rather than solely on the evidence presented during trial violating [Bowman's] rights to . . . a fair and impartial jury . . . ." *Id.* at 4-5. This is partly because the presence of the newspaper article in the jury room "creates too great a presumption that one or more of the jurors were exposed to it." *Id.* at 7.

Bowman raised this issue on direct appeal, where the Missouri Court of Appeals affirmed the decision of the trial court, finding:

> The trial court has broad discretion in determining whether juror misconduct requires a mistrial. *State v. Williams*, 577 S.W.2d 59, 62 (Mo. App. E.D. 1979). It is the trial court's obligation when faced with an issue of publicity as in this case "to determine whether the publicity created a danger of substantial prejudice to the defendant." *Sawyer v. State*, 810 S.W.2d 536, 538 (Mo. App. E.D. 1991). If the court finds that the publicity creates such a danger of prejudice against the defendant, it must poll the

6

> jurors individually to determine the extent and effect of the publicity upon the jury. *Id.*
>
> Here, upon being informed that one of the jurors brought that day's newspaper to the jury room which included an article relating to Bowman and his trial, the trial court ordered the bailiff to seize the newspaper and individually questioned each juror in chambers on whether he or she read or had been exposed to any information regarding Bowman's case outside of trial. Juror Number 73 told the court that although she brought the newspaper to the jury room, she had only looked at the recipes and People section of the paper and had not read any information about Bowman's trial. She also informed the court that no other juror had looked at her newspaper. Each juror stated to the court that they had not been exposed to any information about Bowman's case outside of trial. The trial court explicitly admonished each juror to avoid the news media until the completion of the trial, which each juror agreed to do. In addition, the trial court rearranged its schedule so the case would be submitted to the jury that day for deliberations.
>
> We can not say under the circumstances of this case that the trial court erred in denying Bowman's request for a mistrial or his request to replace Juror Number 73 because of alleged exposure to a newspaper article relating to Bowman and his trial. *See State v. Pierce*, 652 S.W.2d 230, 233 (Mo. App. E.D. 1983) (holding the trial court did not err in not granting a mistrial after its questioning of the jury reflected that no jurors had seen the newspaper article relating to the defendant's case that was published during trial). As the record before use reflects none of the jurors in Bowman's case had seen the newspaper article in question, his right to a fair trial was not prejudiced. Therefore, the trial court did not err in denying his request for a mistrial and request to replace Juror Number 73. Point II is denied.

(Direct Appeal Order at 4-5).

Federal habeas courts give substantial deference to factual determinations made by state courts. Under 28 U.S.C. § 2254, which governs federal habeas claims made by state prisoners, any "determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e). The burden is on the petitioner to rebut "the presumption of correctness by clear and convincing evidence." *Id.* "Such 'presumption of correctness applies to all factual determinations made by state courts of competent jurisdiction . . . ." *Tunstall v. Hopkins*, 306

F.3d 601, 605 (8th Cir. 2002) (quoting *Pruett v. Norris*, 153 F.3d 579, 584 (8th Cir. 1998) (citing *Sumner v. Mata*, 449 U.S. 539, 546 (1981))).

The trial court in Bowman's case, as explained by the Missouri Court of Appeals, questioned the jurors separately in chambers to determine whether any had seen the potentially prejudicial article. Each juror testified that he or she had not seen it, and the trial court found the testimony of each juror to be credible. In other words, the state trial court made a factual determination that no juror had been exposed to the potentially prejudicial newspaper article. This factual determination is entitled to a presumption of correctness under § 2254(e), and Bowman has not produced any evidence to rebut that presumption.[1] Bowman is undoubtedly correct that mid-trial publicity may, in certain circumstances, result in unfairness of constitutional dimension. *See, e.g.*, *Tunstall*, 306 F.3d 601; *see also King v. Bowersox*, 291 F.3d 539 (8th Cir. 2002). But without factual support for the allegation that jurors were exposed to prejudicial publicity, such a claim cannot serve as a basis for habeas relief. Bowman's second ground for relief therefore must fail.

## IV. Ground 3

Bowman's third claim for habeas relief is that his trial counsel was ineffective "when he failed to interview, properly investigate, subpoena and call material witnesses, Lawanda Shears, Debora Williams, Jola Howard, and Juwan Clark whose testimony was necessary to provide [Bowman] with a viable defense." (Support Memo at 8). These witnesses would allegedly have

---

[1] The closest Bowman comes to presenting evidence to rebut the § 2254(e) presumption of correctness is a string of speculation that calls into question the jurors' veracity during their conferences with the trial judge. He contends, for instance, that if the jurors "had read or discussed the article's contents, they would have known that they had likely violated a jury instruction and could have possibly felt a fear of legal consequences by violating the rules given to them by the judge." (Support Memo at 7). He also suggests that if any of the jurors "had read or discussed the article, the incendiary nature of it might have motivated those that had to remain quiet in the hope that they could provide, perhaps in their minds, overdue justice to [Bowman]." *Id.* This is not the clear and convincing evidence necessary to rebut the presumption that a state court's factual determination is correct.

been available to provide alibi testimony. *Id.* at 8-9. Bowman presented this claim to the Rule 29.15 motion court where it was denied. (29.15 Appellate Order at 8). The Missouri Court of Appeals affirmed the ruling of the motion court, reasoning as follows:

> [Bowman] claims that he informed trial counsel about his four witnesses and that three of these witnesses, Shears, Williams, and Howard, would have testified that [Bowman] was at the 'Dream Center,' a carnival, on the date the shooting occurred and the fourth witness, Clark, would have testified that he was with [Bowman] during the entire day of the shooting. [Bowman] did not establish where the Dream Center was located, most importantly where it was located in proximity to the site of the shooting.
>
> At the hearing, Shears testified that on the day of the shooting she saw [Bowman] about four times between noon and 3:00 p.m., and then on and off later that evening at the Dream Center. Shears could not specifically say where [Bowman] was at 2:00 p.m. that day.
>
> Williams testified that her niece and [Bowman] had a child together. She said she was at the Dream Center with her mother, Howard, and saw [Bowman] there between noon and 2:00 p.m., but it could have been 3:00 p.m., and then admitted that she could not say with any certainty whether she saw [Bowman] on the day of the shooting and, if so, at what time.
>
> Howard testified that [Bowman] was the father of her great-grandson. Howard testified that she arrived at the Dream Center around 12:00 noon, spent about an hour with [Bowman] while there, and then left sometime between 1:00 and 1:30 p.m. Howard did not know where [Bowman] was at 2:00 p.m.
>
> Clark testified that [Bowman] was his first cousin and that he saw [Bowman] and [Bowman's] son at a local Chinese restaurant around 1:00 or 2:00 p.m. on the day of the shooting. Clark said that he, [Bowman] and [Bowman's] son left the restaurant and went to the Dream Center at around 2:00 or 2:30 p.m., and stayed there until 5:00 p.m. Clark said that he and [Bowman] did not "leave each other's side" from approximately 1:00 p.m. until 7:00 p.m.
>
> [Bowman] testified that on the day of the shooting, he went to the Dream Center at around 11:00 or 12:00 o'clock, left and met Clark at the Chinese restaurant, then returned to the Dream Center at about 1:00 or 1:30, and left again around 4:00. [Bowman] said he gave the names of the four alibi witnesses to trial counsel, but trial court told him on the day trial started that it would not be a good idea to call them since they were family members and the jury might think that they were lying for [Bowman].

> [Bowman's] trial counsel testified that [Bowman] did not give him the names of any of these alleged alibi witnesses and that he reviewed his notes of the case and did not find the names of any of them. He stated that if [Bowman] had given him these names, he would have them in his notes.
>
> . . .
>
> We find that the motion court did not clearly err in denying [Bowman's] motion on this basis. To prove a claim of ineffective assistance for failing to call a witness, the movant must show that: "(1) trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have produced a viable defense." *Hutchison v. State*, 150 S.W.3d 292, 304 (Mo.banc 2004). [Bowman] proved none of these things. First of all, trial counsel cannot be found ineffective for not having called witnesses that he did not know existed. See *State v. Gilpin*, 954 S.W.2d 570, 575 (Mo.App. W.D. 1997). Trial counsel testified that he was never given these names. The motion court obviously believed trial counsel's testimony over [Bowman's]. We defer to the motion court's determinations of credibility in post-conviction matters. *Rousan v. State*, 48 S.W.3d 576, 589 (Mo.banc 2001).
>
> Second, according to [Bowman], trial counsel told him that he did not want to call these alibi witnesses because it might appear to the jury that they were lying for [Bowman] because they were all members of [Bowman's] family. Additionally, the testimony of the witnesses presented inconsistencies which could further damage [Bowman's] case in front of the jury, and some of the witnesses did not even establish that [Bowman] could not have been at the scene of the shootings when they were committed. "If a decision to forego the presentation of evidence is based on reasonable trial strategy, then it cannot support [a] finding of ineffectiveness." *Coleman v. State*, 256 S.W.3d 151, 156 (Mo.App. W.D. 2008). "Trial counsel is given great discretion in which evidence to present to the jury," *id.*, and, in fact, "[a]s a matter of trial strategy, the determination to not call a witness is virtually unchallengeable." *Worthington v. State*, 166 S.W.3d 566, 577 (Mo. banc 2005).
>
> For the foregoing reasons, Point I is denied.

(29.15 Appellate Order at 5-8).

The standards for legal review of a state prisoner's federal habeas claim, like the standards for factual review, are set forth in § 2254. Under that statute:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d). Under the "contrary to" theory, a district court must conclude "that the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law." *Yang v. Roy*, 743 F.3d 622, 625-26 (8th Cir. 2014). Under the "unreasonable application" theory, a district court must conclude that although the state court has identified the correct legal principles, the state court's application of those principles is objectively unreasonable. *Id.*

To prevail on an ineffective assistance of counsel claim, a claimant must show that his attorney's performance was "deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate counsel's deficiency, the claimant must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. To demonstrate prejudice, the claimant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a § 2254 petition, the petitioner must show that the state court's determination was contrary to or based on an unreasonable of application of *Strickland*.

The state courts reasonably applied *Strickland* in concluding that Bowman did not receive ineffective assistance based on his trial counsel's failure to call alibi witnesses. The 29.15 motion court made a factual finding, which is entitled to a presumption of correctness, that Bowman had not provided the names of the alleged alibi witnesses to his trial counsel. It was reasonable for the state courts to conclude that Bowman's trial counsel was not ineffective for failing to

interview or call alibi witnesses of whom he was not informed. Moreover, the testimony of the proposed alibi witnesses contained numerous inconsistencies. It was reasonable for the state courts to conclude that any decision not to call the proposed alibi witnesses would therefore have been reasonable trial strategy. It would also have been reasonable for the state court to conclude, based on the witnesses' inconsistencies, that presentation of their testimony would have had no impact on the outcome of Bowman's case. Bowman therefore is not entitled to habeas relief on this claim.

**V. Ground 4**

In his final ground for relief, Bowman contends that his trial counsel was ineffective for failing to object to a statement made by the prosecutor during the State's closing argument. (Support Memo at 10). The prosecutor stated: "Ladies and gentleman, this is the predator of the type that makes this City unlivable, the people that go out there with guns and kill people." *Id.* at 11. Bowman contends the prosecutor's "statement is based upon nothing in the record, but has as its sole purpose to inflame the passions and fears of the jury. . . . Finally, it implies that [Bowman] has more than one victim, that he goes out with guns and kills people." *Id.* The Missouri Court of Appeals affirmed the 29.15 motion court's denial of this point, finding:

> At the hearing, trial counsel explained that since his trial strategy had been that [Bowman] was not the shooter, *i.e.*, he did not perpetrate the shooting, that the fact that the prosecutor was calling the person who did the shooting a predator was not harmful to [Bowman]. Trial counsel also maintained that he generally did not object during closing argument as a matter of trial strategy.
>
> An experienced trial attorney knows that it is not always good trial strategy to make all possible objections. *Jones v. State*, 784 S.W.2d 789, 792 (Mo.banc 1990). "In many instances, seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes. It is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good." *State v. Tokar*, 918 S.W.2d 753, 768 (Mo.banc 1996).

> The decision whether to object is inherently strategic and is left to the judgment of trial counsel. *State v. Suarez*, 867 S.W.2d 583, 587 (Mo.App. W.D. 1993). A decision based on reasonable trial strategy is virtually unchallengeable. *State v. Sanders*, 903 S.W.2d 234, 240 (Mo.App. E.D. 1995).
>
> . . .
>
> For the foregoing reasons, Point II is denied.

(29.15 Appellate Order at 8-9).

In short, the Court of Appeals found that Bowman's trial counsel acted based on a reasonable trial strategy. This determination was not contrary to or an unreasonable application of *Strickland*. Bowman's trial counsel explained that, as a matter of strategy, he did not object to the characterization of the perpetrator as a predator because doing so would not have been in accord with his theory that Bowman was not the perpetrator. He also explained that part of his trial strategy was to limit his objections during closing arguments. It was reasonable for the state courts to conclude that these decisions fell within the wide range of deference given to a trial attorney's strategic decisions. *See, e.g.*, *Mills v. Armontrout*, 926 F.2d 773, 774 (8th Cir. 1991) ("Generally, trial strategy and tactics 'are not cognizable in a federal habeas corpus petition.'" (quoting *Comer v. Parratt*, 674 F.2d 734, 737 (8th Cir. 1982))); *see also Driscoll v. Delo*, 71 F.3d 701, 714 (8th Cir. 1995) (finding trial counsel's strategy objectively reasonable where part of strategy was to limit objections during opposition's closing argument). Bowman is therefore not entitled to habeas relief on this ground.

Accordingly,

**IT IS HEREBY ORDERED** that Adrian Bowman's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, (ECF No. 1), is **DENIED**, and his claims are **DISMISSED** with prejudice. A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that because Bowman cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998).

Dated this 18th Day of February, 2015.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE